UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
SEP 1 0 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

GHAZANFAR IQBAL,

                Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, ET AL.,

                Defendants.

**DECISION AND ORDER**

1:17-CV-01066-EAW

## INTRODUCTION

Ghazanfar Iqbal ("Plaintiff") commenced this action on October 23, 2017, challenging the United States Citizenship and Immigration Service's (the "USCIS") denial of his naturalization application under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* (the "INA"), and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"). (Dkt. 1). Plaintiff claims that Defendants violated the INA and the APA by improperly concluding that he failed to maintain continuous residency in the United States for the statutorily required period and lacked the "good moral character" necessary for naturalization. (*See* Dkt. 1 at 12-13). Plaintiff requests that the Court order a plenary hearing, review his application for naturalization *de novo*, and grant him his request for naturalization. (*Id.* at 14).

Pending before the Court is Defendants' motion for summary judgment (Dkt. 15) and motion to amend/correct the motion for summary judgment (Dkt. 16). Because the Court concludes that the undisputed facts establish that Plaintiff failed to maintain

- 1 -

continuous residency in the United States from the date of his naturalization application up to the time of admission to citizenship, summary judgment is granted in favor of Defendant without the Court reaching the issue concerning the determination as to Plaintiff's good moral character.

## BACKGROUND

Unless otherwise indicated, the following facts are taken from the parties' Rule 56 statements. (*See* Dkt. 15-17; Dkt. 20). Plaintiff, a citizen of Pakistan, arrived in this country in 1996 and is a lawful permanent resident of the United States. (Dkt. 15-17 at ¶¶ 1-3; Dkt. 20 at ¶¶ 1-3). According to Plaintiff, he has a wife and four children who are all citizens of the United States. (Dkt. 1 at ¶ 24 (Complaint); *see* Dkt. 15-16 at 9 (testifying about his family)). Plaintiff was self-employed at Kohinoor, a Halal meat store, from 2002 until 2005. (Dkt. 15-17 at ¶ 5; Dkt. 20 at ¶ 5).

On September 14, 2009, Plaintiff applied for naturalization and was interviewed by the USCIS on December 8, 2010. (Dkt. 15-17 at ¶ 10; Dkt. 20 at ¶ 10; *see* Dkt. 15-2 at ¶ 9 (Declaration of Adam Gallagher)). On March 1, 2011, Plaintiff's application was denied based on his failure to disclose past due taxes. (*See* Dkt. 1 at ¶ 26; Dkt. 18-1 at 5-6 (USCIS 2011 Notice of Decision)). The USCIS specifically relied upon the requirement in 8 U.S.C. § 1427(a) that an applicant "during all the periods referred to in this subsection has been and still is a person of good moral character," and the definition in 8 U.S.C. § 1101(f) that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be

established, is, or was . . . [o]ne who has given false testimony for the purpose of obtaining any benefits under this Act." (Dkt. 18-1 at 4-5).

On March 30, 2011, Plaintiff filed a Form N-366 Request for Hearing on a Decision of Naturalization to administratively challenge the USCIS's determination, pursuant to 8 U.S.C. § 1447(a). (Dkt. 1 at ¶ 27; *see* Dkt. 18-3 (N-366 Request for a Hearing)). Plaintiff subsequently attended two interviews in relation to his § 1447(a) administrative appeal, on March 13, 2012, and April 9, 2015. (*See* Dkt. 15-17 at ¶ 11; Dkt. 20 at ¶ 11; *see also* Dkt. 15-2 at ¶ 9; Dkt. 15-5 at 1 (2017 Decision denying naturalization application)).

Frustrated that after many years a decision had not been made with respect to his administrative appeal, Plaintiff filed a federal lawsuit *pro se* on July 21, 2015. Within a matter of weeks, the USCIS reached a decision denying Plaintiff's administrative appeal, but it delayed issuing its determination because of the pending litigation. Ultimately, on June 6, 2016, this Court granted the USCIS' motion to dismiss the *pro se* action for lack of subject matter jurisdiction because, among other things, the USCIS had not yet issued its final decision. *See Iqbal v. Sec'y U.S. Dep't of Homeland Sec.*, 190 F. Supp. 3d 322 (W.D.N.Y. 2016). On September 20, 2016, the USCIS issued a "Notice of Intent to Deny" Plaintiff's application for naturalization, and then officially denied the application on June 28, 2017. (Dkt. 15-17 at ¶¶ 12-13; Dkt. 20 at ¶¶ 12-13; *see* Dkt. 15-4; Dkt. 15-5).

The USCIS based its final decision upon two separate findings. First, the USCIS determined that Plaintiff failed to demonstrate that he was "a person of good moral character" from the time he filed his application to the present because he "provided false testimony, under oath, with the intent to obtain an immigration benefit." (Dkt. 15-5 at 2).

Second, the USCIS determined that Plaintiff had not demonstrated that he "continuously reside[d] within the United States" since the date he filed his application because he had spent a significant period of time making frequent and lengthy trips outside this country between July 9, 2014, and July 2, 2016, which cast doubt on whether the United States was Plaintiff's actual place of residence. (*See id.* at 3, 5).

Plaintiff's wife and their four children moved to Saudi Arabia in September 2016, and, apart from one of his children, Plaintiff's immediate family has not since returned to the United States. (Dkt. 15-17 at ¶¶ 14-15; Dkt. 20 at ¶¶ 14-15). Plaintiff also carries a "Saudi Arabian Iqama Resident Identity Card" (the "Iqama Card"). (Dkt. 15-17 at ¶ 4; Dkt. 20 at ¶ 4; *see* Dkt. 15-12 (Iqama Card)). According to Plaintiff, the Iqama Card permits him to remain in Saudi Arabia for extended periods (*see* Dkt. 15-16 at 32) and is both a "work permit" (*id.* at 22) and proof of Saudi Arabian residency (*id.* at 34). Plaintiff's wife and children planned to move to Malaysia in January 2019 and intend to remain there for at least the following four years while their children engage in educational endeavors. (Dkt. 15-17 at ¶ 16; Dkt. 20 at ¶ 16; *see* Dkt. 15-16 at 15-17). Beginning July 8, 2014, Plaintiff traveled outside the United States during the following timeframes:

> July 8, 2014 to October 4, 2014 (89 days)
> October 13, 2014 to November 22, 2014 (41 days)
> December 5, 2014 to February 28, 2015 (86 days)
> March 5, 2015 to April 7, 2015 (34 days)
> June 20, 2015 to November 17, 2015 (151 days)
> December 18, 2015 to January 11, 2016 (48 days)
> February 13, 2016 to July 2, 2016 (141 days)
> September 18, 2016 to March 2, 2017 (166 days)
> March 18, 2017 to October 16, 2017 (213 days)
> November 24, 2017 to July 10, 2018 (229 days)

(Dkt. 15-17 at ¶ 17; Dkt. 20 at ¶ 17).

## PROCEDURAL HISTORY

Plaintiff commenced this action on October 23, 2017, alleging that Defendants violated the INA and the APA by wrongfully denying his naturalization application after concluding that he lacked "good moral character" and failed to maintain continuous residency in the United States as required by law. (Dkt. 1 at 12-13). Defendants answered the Complaint on December 29, 2017 (Dkt. 3), and the case proceeded to discovery (*see* Dkt. 9). Discovery concluded on November 7, 2018. (Dkt. 12).

On December 21, 2018, Defendants filed a motion for summary judgment.[1] (Dkt. 15). Defendants move for summary judgment on three grounds. First, Defendants argue that the USCIS' determination as to whether Plaintiff maintained continuous residency in the United States for the statutorily required period is completely discretionary and thus, is not subject to judicial review. (Dkt. 15-1 at 13-16). Second, and in the alternative, Defendants argue that even if the Court can review the USCIS' residency determination, Plaintiff failed to maintain continuous residency as a matter of law. (*Id.* at 16-20). Finally, Defendants argue that because Plaintiff provided multiple misrepresentations and false statements in an effort to obtain immigration benefits, Plaintiff lacks the "good moral

---

[1]     Defendants also filed a motion to amend/correct the motion for summary judgment on the same day. (Dkt. 16). This "motion" should not have been filed as such because the docket entry simply contains a corrected notice of motion pertaining to the already filed motion for summary judgment. The original notice of motion was filed along with an unexecuted and incomplete attorney declaration. (*See* Dkt. 15 at 3-4). The Court presumes this was an inadvertent filing error for which no motion was required to remedy. However, to the extent Defendants have moved to correct their initial notice of motion by eliminating the unexecuted attorney declaration (Dkt. 16), that motion is granted.

character" required for naturalization. (*Id.* at 20-27). Although Plaintiff concedes every factual assertion contained in Defendants' Rule 56 statement (Dkt. 20), he argues that Defendants' factual statements do not entitle them to judgment as a matter of law on the issues of his continuous residency and "good moral character" (Dkt. 19).

The Court held oral argument in this matter on July 22, 2019, and reserved decision. (Dkt. 27).

## DISCUSSION

### I.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the

moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   Standards Applicable to the Naturalization Context

"Congress vested the Attorney General with 'sole authority to naturalize persons as citizens of the United States,' 8 U.S.C. § 1421(a), and the Attorney General in turn delegated that authority to USCIS." *Rivera v. U.S. Citizenship & Immigration Servs.*, 5 F. Supp. 3d 439, 441 (S.D.N.Y. 2014). However, "a person whose application for naturalization has been denied by USCIS, and then upheld on administrative appeal, 'may seek review of such denial before the United States District Court for the district in which such person resides.'" *Del Orbe v. Holder*, No. 12 Civ. 1057 (PAE), 2012 WL 3655923, at *2 (S.D.N.Y. Aug. 27, 2012) (quoting 8 U.S.C. § 1421(c)). Section 1421(c) "requires the District Court to review the denial of naturalization 'de novo,' to 'make its own findings of fact and conclusions of law,' and 'at the request of the petitioner, [to] conduct a hearing *de novo* on the application.'" *Chan v. Gantner*, 464 F.3d 289, 295 (2d Cir. 2006) (quoting

8 U.S.C. § 1421(c)). "Nevertheless, a court may grant summary judgment in cases brought under 8 U.S.C. § 1421(c)." *Ali v. Holder*, No. 11-CV-6122 CJS, 2012 WL 1014834, at \*4 (W.D.N.Y. Mar. 22, 2012) (citing *Chan*, 464 F.3d at 295-96).

"No alien has the slightest right to naturalization unless all statutory requirements are complied with[.]" *United States v. Ginsberg*, 243 U.S. 472, 475 (1917); *see also Fedorenko v. United States*, 449 U.S. 490, 506 (1981) ("[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship."). "[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." *I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988) (quoting *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 637 (1967))); *see Rivera*, 5 F. Supp. 3d at 442 (stating that the applicant "must affirmatively show that he has met all statutory requirements for becoming a naturalized citizen"). "When an applicant fails to do so, summary judgment for the Government may be appropriate." *Rivera*, 5 F. Supp. 3d at 442 (citing *Chan*, 464 F.3d at 295-96).

### III. The Attorney General's Discretion Under 8 U.S.C. § 1427(b) is Not Implicated

Section 1427(a) of Title 8 of the United States Code "sets forth the general requirements for naturalization[.]" *Boatswain v. Ashcroft*, 267 F. Supp. 2d 377, 379 (E.D.N.Y. 2003), *aff'd sub nom. Boatswain v. Gonzales*, 414 F.3d 413 (2d Cir. 2005). It provides as follows:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of

filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, *(2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship*, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a) (emphasis added); *see Gizzo v. I.N.S.*, No. 02 Civ. 4879 (RCC), 2003 WL 22110278, at *2 (S.D.N.Y. Sept. 10, 2003). Section 1427(b), entitled "Absences," describes what effect continuous extended absences from the United States have on the applicant's continuity of residence. *See* 8 U.S.C. 1427(b). This subsection provides, in pertinent part, as follows:

Absence from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the application for naturalization, or during the period between the date of filing the application and the date of any hearing under section 1447(a) of this title, shall break the continuity of such residence, *unless the applicant shall establish to the satisfaction of the Attorney General* that he did not in fact abandon his residence in the United States during such period.

8 U.S.C. § 1427(b) (emphasis added). Section 1427(b) also provides that a continuous absence of a year or more "during the period for which continuous residence is required for admission to citizenship (whether preceding or subsequent to the filing of the application for naturalization) shall break the continuity of such residence." *Id.* Accordingly, subsection (b) sets forth two bright-line time periods at which point the applicant's continuity of residence is definitively broken or is rendered presumptively so, depending on whether the absence was more than a year or more than six months but less

than a year. *See United States v. Larsen*, 165 F.2d 433, 434 (2d Cir. 1947) (interpreting an earlier version of the statute and stating that while "continuous absence from the United States for more than six months but less than a year during the five-year period is made presumptively a break in continuity which . . . may be rebutted by satisfactory evidence of reasonable cause for such absence[,] . . . continuous absence for more than that is expressly made a break in continuity, with exceptions not here pertinent, without provision for any rebuttal"); *In re Naturalization of Vafaei-Makhsoos*, 597 F. Supp. 499, 501 (D. Minn. 1984) ("The conclusion that Congress meant to erect an absolute bar in cases of absences greater than one year is strengthened by the fact that the statute specifically allows petitioners the opportunity to demonstrate that they did not abandon their United States residence in cases of shorter absences (from six months to one year).").

Defendants argue that the USCIS' continuous residence determination is not subject to judicial review because the naturalization applicant must "establish to the satisfaction of the Attorney General" that he did not abandon his residency during the statutorily required period. (Dkt. 15-1 at 13-14). Plaintiff concedes that the periods set forth in Defendants' Rule 56 statement correctly identify the timeframes in which he was absent from this country. (Dkt. 20 at ¶ 17). However, Plaintiff argues that his absences that occurred after his § 1447(a) hearing on the initial denial of his application cannot be considered. (Dkt. 19 at 8-9). At least as it pertains to whether § 1427(b)'s provisions apply to this case—and thus, whether the Attorney General's discretion has even been implicated here—Plaintiff's interpretation of the statute appears to be correct.

Defendants have submitted no evidence that Plaintiff has ever been absent from the United States for a continuous period of a year or more. At most, Defendants contend—and Plaintiff concedes—that he was absent for a continuous period of six months or more on two occasions: March 18, 2017, to October 16, 2017, and November 24, 2017, to July 10, 2018. (Dkt. 15-17 at ¶ 17; Dkt. 20 at ¶ 17). However, those time periods occurred after Plaintiff's § 1447(a) hearing, and by its terms, the presumptions under § 1427(b) for absences greater than six months but less than one year only apply prior to the §1447(a) hearing. *See* 8 U.S.C. 1447(b) (any absence of more than six months but less than one year must occur "during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the application for naturalization, or during the period between the date of filing the application and the date of any hearing under section 1447(a)," in order to presumptively break continuity of residence).[2]

Section 1447(a) provides that "[i]f, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer." *Id.* § 1447(a). It is undisputed that Plaintiff filed his application

---

[2]    The Court is not convinced that it is clear that the phrase "the period for which continuous residence is required for admission to citizenship" in § 1447(b) is limited by the language that follows (describing the time period before filing the naturalization application and the time period after the application filing but before the § 1447(a) hearing). In other words, "the period for which continuous residence is required for admission to citizenship" could arguably be defined by § 1427(a) and therefore would run through the date of admission to citizenship—thus making the presumption under § 1427(b) for an absence greater than six months but less than one year relevant up until the time of admission to citizenship. However, the Government has not specifically advocated for this interpretation of the statute, and such a reading would potentially conflict with the Second Circuit's decision in *Gildernew v. Quarantillo*, 594 F.3d 131 (2d Cir. 2010) (discussed below).

for naturalization on September 14, 2009 (Dkt. 15-17 at ¶ 10; Dkt. 20 at ¶ 10), and, according to Plaintiff, this application was denied on March 1, 2011 (*see* Dkt. 1 at ¶ 26; Dkt. 18-1 at 5-6). Plaintiff requested a hearing on the denial of his application (Dkt. 1 at ¶ 27; *see* Dkt. 18-3) and was subsequently interviewed in March 2012 and April 2015 (*see* Dkt. 15-17 at ¶ 11; Dkt. 20 at ¶ 11; *see* Dkt. 15-2 at ¶ 9; Dkt. 15-4 at 4; Dkt. 15-5 at 1). Because both periods during which Plaintiff was continuously absent from the United States for over six months occurred *after* Plaintiff's § 1447(a) hearing took place (*i.e.*, in 2017 and 2018), § 1427(b) precludes either one of those absences from—standing alone— creating a presumption that there was a break in continuity of residence. The Second Circuit has indicated that this is the correct construction of § 1427(b) in explaining how § 1427(b) and § 1447(a) intersect:

> The two clauses[ within the first paragraph of § 1427(b)], read together, . . . embody the entire relevant period with respect to continuous residence: the period immediately preceding the filing of the application, and the period subsequent to the filing of the application until the sooner of the applicant's admission to citizenship, or an administrative hearing following denial of the application.

*Gildernew v. Quarantillo*, 594 F.3d 131, 134 (2d Cir. 2010) (addressing an absence of greater than one year).

The USCIS did not determine that Plaintiff's break in continuity of residency was based upon § 1427(b)—USCIS issued its "Notice of Intent to Deny" Plaintiff's naturalization application on September 20, 2016, before Plaintiff was ever absent for these periods exceeding six months. Thus, although Defendants ask this Court to determine that the Attorney General's discretion under § 1427(b) is unreviewable, this discretion was

never triggered because the presumptions of § 1427(b) were not applicable at the time of the USCIS' decision and remain inapplicable now. While the Court seriously doubts that the Attorney General's continuous residence determination is unreviewable in light of the "sweeping *de novo* review provided by Section 1421(c)," *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 291 n.1 (2d Cir. 2009); *see Ali*, 2012 WL 1014834, at *5-7 (rejecting the contention that the phrase "to the satisfaction of the Attorney General" precluded judicial review of a § 1427(b) continuous residency determination), the Court need not decide this issue because the continuous residency analysis relevant to this action is performed under § 1427(a)(2)— not § 1427(b)—where no similar discretionary language has been inserted into the statute.

## IV. Defendants Established that Plaintiff Failed to Maintain Continuous Residency as a Matter of Law, and Plaintiff Failed to Raise a Triable Issue of Fact

As noted above, "[t]o become a naturalized citizen, an applicant must meet the statutory preconditions set forth in 8 U.S.C. § 1427." *Mitu v. Sessions*, No. 16 Civ. 5876 (KPF), 2018 WL 456290, at *6 (S.D.N.Y. Jan. 17, 2018). "Under 8 U.S.C. § 1427(a), the threshold issue is whether the naturalization applicant continuously resides in the United States prior to filing [his] application and during the pendency of [his] application." *McElhaney v. U.S. Citizenship & Immigration Servs.*, No. 3:09-CV-1474 (CFD), 2010 WL 4365819, at *4 (D. Conn. Oct. 20, 2010). "The INA defines 'residence' as 'the place of general abode; the place [of] general abode of a person means his principal, actual dwelling place in fact, without regard to intent.'" *Raynolds v. Napolitano*, No. 3:11CV205 (AVC), 2013 WL 2149702, at *3 (D. Conn. May 16, 2013) (quoting 8 U.S.C. § 1101(a)(33)).

"Residence" is similarly "defined in the Code of Federal Regulations as the 'alien's domicile, or principal actual dwelling place, without regard to the alien's intent.'" *Id.* (quoting 8 C.F.R. § 316.5(a)).

As explained above, § 1427(b) identifies consequences particular to an applicant who has been absent from the United States for "more than six months but less than one year" or for "a continuous period of one year or more" during "the period for which continuous residence is required for admission to citizenship." 8 U.S.C. § 1427(b). Meanwhile, § 1427(a) imposes an overarching requirement that an applicant for naturalization reside "continuously within the United States from the date of the application up to the time of admission to citizenship." *Id.* § 1427(a)(2). Because Plaintiff was continuously absent from the United States for six months or longer only after April 9, 2015, the last "administrative hearing following denial of [his] application" for naturalization, *Gildernew*, 594 F.3d at 134, § 1427(b)'s presumptions do not apply. However, the inapplicability of § 1427(b)'s temporal rules does not foreclose the conclusion that Plaintiff has nevertheless failed to "*reside*[] *continuously* within the United States from the date of the application *up to the time of admission to citizenship.*" *See* 8 U.S.C. § 1427(a)(2) (emphases added); 8 C.F.R. § 316.2(6)(2) ("[To be eligible for naturalization, an alien must establish[, among other things,] that he or she . . . [h]as resided continuously within the United States from the date of application for naturalization *up to the time of admission to citizenship.*" (emphasis added)); *Escaler*, 582 F.3d at 289 (acknowledging that "continuous residence from the date of application until admission to

- 14 -

citizenship" is among a number of requirements necessary to "[b]ecoming a naturalized U.S. citizen").

At least two courts outside this Circuit have adopted this viewpoint. The decision in *Sharma v. U.S. Dep't of Homeland Sec.*, No. CV H-08-1197, 2009 WL 10697616 (S.D. Tex. Sept. 11, 2009) succinctly explained the distinction between § 1427(b) and § 1427(a):

> Sharma misinterprets the relationship between absences and continuity of residence. While 8 U.S.C. § 1427 assumes a break in continuity of residence in specific scenarios (e.g. absences longer than six months), it does not preclude a finding of a break in residency absent those circumstances. Sharma mistakenly reasons that a condition sufficient to break residency (absence of more than six months) is necessary to break residency, and that without such an absence he cannot have abandoned his residence.

*Id.* at *3; *see also Khan v. U.S. Citizenship & Immigration Servs.*, No. 15-CV-23406, 2019 WL 1323688, at *5 (S.D. Fla. Mar. 25, 2019) ("[E]ven if Plaintiff had initially established residence in the United States, the Court may still consider his regular and frequent trips to Pakistan in determining whether there was a break in residency." (citing *Sharma*, 2009 WL 10697616, at *3)), *appeal filed,* No. 19-12050 (11th Cir. May 28, 2019).

The interpretation of § 1427 adopted by *Sharma* and *Khan* is persuasive. By contrast, Plaintiff takes the position that the INA categorically permits repeated absences from the United States of less than six months before the § 1447(a) hearing and of less than one year before admission to citizenship. Plaintiff has cited no case authority for this proposition. Instead, he relies on several commentators in the field of immigration and naturalization. (*See* Dkt. 19 at 10). Plaintiff's citations do suggest that "absences of less than six months between the filing of the application and the date of admission to citizenship do not interrupt continuous residence." David Levy, U.S. Citizenship and

Naturalization Handbook § 7:15 (2018); *see also* Gordon, *et al.*, 4 Immigration Law and Procedure § 95.02 (2019) ("Absence from the United States of six months or less does not affect the continuity of residence. The statute does not mention such absences, but manifestly sanctions them in the light of the specific directives spelled out in the following paragraphs."). However, neither source analyzes the effect of several successive multi-month absences on the continuity of residence.

According to Plaintiff, an applicant for naturalization may reside outside the United States for the overwhelming majority of time between the filing of his application and his admission to citizenship so long as the applicant returns to the United States just prior to the running of the six-month or one-year abandonment period—whichever the case may be. Plaintiff's position leaves § 1427(a)(2) without any significant meaning.

Section 1427(a)(2) requires the applicant to have "resided continuously within the United States" for the relevant statutory period. 8 U.S.C. § 1427(a)(2). As noted above, "[t]he INA defines 'residence' as 'the place of general abode; the place [of] general abode of a person means *his principal, actual dwelling place in fact*, without regard to intent.'" *Raynolds*, 2013 WL 2149702, at *3 (quoting 8 U.S.C. § 1101(a)(33)) (emphasis added). The word "continuous" is not defined in the INA. "When a term goes undefined in a statute, [courts] give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). The common dictionary definition of "continuous" describes an activity that is "marked by uninterrupted extension in space, time, or sequence." *Continuous*, Merriam-Webster, https://www.merriam-webster.com/dictionary/continuous (Aug. 22, 2019).

Certainly, one or even several temporary absences of less than six months in duration would likely have little impact on whether an applicant has "resided continuously within the United States . . . up to the time of admission to citizenship." 8 U.S.C. § 1427(a); *see Alcarez-Garcia v Ashcroft*, 293 F.3d 1155, 1158 (9th Cir. 2002) ("[T]he government concedes that continuous physical presence is not required to establish residence and that temporary absences do not operate to interrupt the period of the residence."); *Li v. Chertoff*, 490 F. Supp. 2d 130, 132 (D. Mass. 2007) ("[T]he mere fact of physical departure does not alone constitute the lack of 'physical presence' necessary to result in a conclusion of abandonment."). In other words, a strict application of the word "continuously" may not be appropriate where such absences are fleeting and few. However, to conclude that an applicant's "principal, actual dwelling place in fact" has continuously remained in the United States even though he chose to live abroad for the vast majority of the statutorily required period—returning only to avoid § 1427(b)'s presumption of abandonment— would render § 1427(a)(2)'s continuity of residence requirement superfluous. *See Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 330 (2d Cir. 2007) (noting the "usual practice of rejecting a reading of a statute that would render a section of it superfluous"); *Allen Oil Co. v. Comm'r*, 614 F.2d 336, 339 (2d Cir. 1980) ("Normally, a statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless.").

Since Plaintiff was required to have "resided continuously within the United States . . . up to the time of admission to citizenship," all of Plaintiff's frequent and extended absences from the United States are appropriately considered in determining whether he

satisfied § 1427(a)(2). The period of time relevant to this analysis is the 1,463 days between July 8, 2014, and July 10, 2018, identified in Defendants' unopposed Rule 56 statement. (Dkt. 15-17 at ¶ 17; Dkt. 20 at ¶ 17). Of those 1,463 days, Plaintiff was absent from the United States for 1,198 days. Stated differently, Plaintiff remained outside the United States for almost 82% of the time over the course of about four years. No rational factfinder could conclude that the United States remained Plaintiff's "principal, actual dwelling place in fact," 8 U.S.C. § 1101(a)(33), and that he resided here "continuously" when Plaintiff lived in the United States just 18% of the time, *see also Khan*, 2019 WL 1323688, at *5 (stating that the applicant's technical compliance with the statute, "returning to the United States . . . on multiple occasions before the six-month presumptive time limit was triggered," was insufficient to "establish continuous residence in the United States"); *see generally Berenyi*, 385 U.S. at 637 ("This Court has often stated that doubts should be resolved in favor of the United States and against the claimant." (quotation omitted)).

Defendants rely on *Raynolds v. Napolitano*, No. 3:11CV205 (AVC), 2013 WL 2149702 (D. Conn. May 16, 2013), where the court dealt with a relatively analogous set of facts. In *Raynolds*, the alien filed a naturalization application on December 27, 2004, but, "[b]eginning in 2005, [she] spent the majority of her time outside the United States." *Id.* at *1, *3. Although the applicant spent at least one "seven[-]month absence" outside the United States prior to her second interview with the USCIS and the denial of her application, *id.* at *1, the *Raynolds* court did not base its decision on the presumption found in § 1427(b). Instead, the court emphasized the fact that the applicant "was only in the

United States for 52 days" between 2007 and December 22, 2010. *Id.* at *3. As a result, the court held that it could not "conclude that Connecticut was Raynolds' 'actual dwelling place in fact,'" and determined that the applicant "did not meet the continuous residency requirement contained in 8 U.S.C. § 1427(a)." *Id.*

The *Raynolds* decision is consistent with the approach taken by the courts in *Sharma* and *Khan*. The *Sharma* and *Khan* courts also sought guidance from a set of non-exclusive factors outlined in the USCIS' regulations pertaining to the disruption of continuity of residence. These factors include whether: (1) "[t]he applicant did not terminate his or her employment in the United States"; (2) "[t]he applicant's immediate family remained in the United States" (3) "[t]he applicant retained full access to his or her United States abode"; and (4) "[t]he applicant did not obtain employment while abroad." 8 C.F.R. § 316.5(c)(1)(i)(A)-(D); *see Khan*, 2019 WL 1323688, at *5; *Sharma*, 2009 WL 10697616, at *4. Defendants have cited to those same factors here and argue that they resolve in their favor. (Dkt. 23 at 6).

The record evidence establishes that Plaintiff's immediate family moved to Malaysia and intends to remain there for at least the next four years. (Dkt. 15-16 at 15-17). In addition, Plaintiff's Iqama Card indicates that he is a resident of Saudi Arabia and is actively employed by a foreign company. (*See* Dkt. 15-13; Dkt. 15-16 at 22-23, 34). Accordingly, the second and fourth factors weigh heavily against Plaintiff.

Although Defendants contend that "Plaintiff has submitted no evidence as to his access to his United States abode for the nearly two years that he was in Saudi Arabia" (Dkt. 23 at 6), Defendants, as the movants on this motion, carry the burden of production,

- 19 -

*see generally Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" (quotation omitted)). According to Plaintiff's supplemental responses to Defendants' interrogatories, Plaintiff maintained a place of abode within the United States from 2000 until at least 2018. (Dkt. 15-9 at 2). Thus, this third factor either weighs in Plaintiff's favor or is neutral.

With respect to the first factor—Plaintiff's termination of employment in the United States—the record is somewhat ambiguous. Although it appears that Plaintiff was unemployed between 2013 and 2018 (Dkt. 15-9 at 3-4), the record also suggests that Plaintiff suffered a "disabling accident" on December 6, 2013, and "has been disabled and not working" since that date (Dkt. 15-10 at 4). While Plaintiff maintained relatively stable employment and a place of abode in the United States for several years (*see* Dkt. 15-9 at 2-4), it appears that Plaintiff became unemployed after December 2013 and remained as such until sometime in 2018 (*id.* at 4; *see* Dkt. 15-10 at 4). Although Plaintiff claims that this period of unemployment was due to a "disabling accident," there is little to no evidence in the record relating to this incident. Indeed, Plaintiff testified that he did not receive "disability benefits" while recovering from his injuries and simply relied upon "insurance." (Dkt. 15-16 at 9). Despite suffering some unidentified injury, which prevented him from seeking new employment for about four years, Plaintiff was still able to travel abroad for significant periods of time between July 2014 and July 2018, and he is now apparently working in Saudi Arabia. Thus, this first factor either weighs against Plaintiff or is neutral.

- 20 -

In addition, while Plaintiff appears to have complied with the technical requirements of § 1427(b), by returning to the United States before a presumptive break in continuity occurred, Plaintiff's sporadic and brief return visits were simply calculated to avoid the consequences of these temporal time constraints and do not demonstrate any further connections to his purported residency in New York. (Dkt. 15-16 at 29 (testifying that he remained abroad for five months because, while he "wanted to be with [his] family, . . . the law requires that you cannot be for like, whatever, six months so I had to come back, stay here for sometime [sic] and then go back"), 31 (testifying that the reason he returned to the United States for just 16 days was because he "didn't want to go over [the] six month legal period because [he is] a Green Card holder")); *see Abdul-Khalek v. Jenifer*, 890 F. Supp. 666, 671 (E.D. Mich. 1995) ("It would appear from the record that Ms. Abdul-Khalek only returned to the United States to preserve her status as a lawful permanent resident (and to see her extended family)."). And, of course, the fact that Plaintiff spent almost 82% of his time between July 8, 2014, and July 10, 2018, living abroad significantly weighs against him. *See Khan*, 2019 WL 1323688, at *5 (considering that the plaintiff had "spent more time living with his wife and children in his home in Pakistan than he spent at any address in the United States"); *Raynolds*, 2013 WL 2149702, at *3 (considering that the applicant "spent the majority of her time outside the United States" and only resided within the United States for 52 days between 2007 and December 22, 2010).

Furthermore, the time Plaintiff spends abroad appears to have only increased since 2016, when his immediate family left the United States. (*See* Dkt. 15-16 at 9; Dkt. 15-17 at ¶ 17; Dkt. 20 at ¶ 17). Although his youngest son returned to the United States with him

on at least two occasions (Dkt. 15-16 at 25), Plaintiff's immediate family is expected to remain in Malaysia for the foreseeable future (*id.* at 15-17). While Plaintiff claims he will remain in the United States to attend to his job (*id.* at 17), it is notable both that his Iqama Card allows him to work in Saudi Arabia (*id.* at 22; *see* Dkt. 15-13), and that he maintains real property in Pakistan (Dkt. 15-9 at 4). The balance of Plaintiff's contacts abroad outweighs his comparatively minimal contacts here and further undermines any argument that the United States has remained Plaintiff's "principal, actual dwelling place in fact." 8 U.S.C. § 1101(a)(33); *see* 8 C.F.R. § 316.5(a). This is especially true in light of the increasing frequency and duration of his extended periods away from this country. *See Khan*, 2019 WL 1323688, at *5; *Raynolds*, 2013 WL 2149702, at *3; *Sharma*, 2009 WL 10697616, at *3; *see also McElhaney*, 2010 WL 4365819, at *4 ("To continuously reside in the United States necessarily requires an applicant to 'reside' in the United States.").

Accordingly, Defendants have established that Plaintiff has not "resided continuously within the United States from the date of the application up to the time of admission to citizenship," and Plaintiff has failed to raise a triable issue of fact. Therefore, Defendants are granted summary judgment based on Plaintiff's failure to satisfy the continuous residence requirement of § 1427(a)(2).

## CONCLUSION

For the foregoing reasons, Defendants' motion to amend the initial notice of motion (Dkt. 16) and motion for summary judgment (Dkt. 15) are granted, and the Complaint is dismissed with prejudice. The Clerk of Court is directed to terminate this action.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      September 10, 2019
            Rochester, New York